FILED
SUPERIOR COURT
OF GUAM

2021 AUG 16 PM 5: 19

CLERK OF COURT

By:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM,**<br><br>vs.<br><br>**PHILIPS JAMES SABLAN,**<br>DOB: 02/21/1968<br><br>Defendant. | **Criminal Case No. CF0248-20**<br>**GPD Report No. 20-11966**<br><br><br>**DECISION AND ORDER DENYING MOTION TO ACQUIT AND GRANTING MOTION FOR A NEW TRIAL** |

This matter came before the Honorable Dana A. Gutierrez on May 17, 2021 for a hearing on Defendant Philips James Sablan's ("Defendant") Motion to Acquit and Motion for a New Trial. Present via Zoom was Assistant Public Defender David J. Highsmith representing Defendant and Assistant Attorney General Sean Brown representing the People of Guam (the "People"). Upon a review of the applicable law, the arguments presented by the parties, and in consideration of the proceedings thus far, the Court now issues this Decision and Order **DENYING** Defendant's Motion to Acquit and **GRANTING** the Defendant's Motion for a New Trial.

## BACKGROUND

The jury trial in this matter began on March 30, 2021, continued through March 31, 2021, April 1, 2021, April 2, 2021, April 5, 2021, and concluded on April 6, 2021. At the start of trial, the Defendant faced the following charges pursuant to the Indictment filed on July 27, 2020: 1) Second Degree Criminal Sexual Conduct (As a First Degree Felony); and 2) Indecent Exposure (As a Third Degree Felony). During the prosecution's case-in-chief, the People called the following witnesses in this order: 1) Police Officer Jessilyn R. Balajadia; 2) Lynna Gustav; 3)

Police Officer Eugenius K. Pewtress; 4) Meriam Handy; 5) Orlando Gustav; and 6) M.T.G. (DOB: 11/4/2011), the alleged victim in the case ( "M.T.G.").

During the People's direct examination of M.T.G. on March 31, 2021, the Defendant made a Guam Rules of Evidence ("GRE") Rule 404(b) objection when the People asked M.T.G. "how many times did [the Defendant] touch [her]." Min. Entry, 11:39:22 A.M. (March 31, 2021). Defendant argued that because the People did not give him notice of an intent to use evidence of multiple prior bad acts pursuant to Rule 404(b), the People could not introduce evidence of multiple allegations of touching. *Id.* at 11:52:08 A.M. The Court agreed and ruled that the People are prohibited from asking M.T.G. "how many times" the Defendant touched her. Min. Entry, 11:26:53 A.M. (Apr. 1, 2021).

After the close of the People's case-in-chief, the Defendant made two oral motions before the Court. The first was a motion to strike ("Motion to Strike") all of M.T.G.'s testimony related to any incidents of alleged touching of M.T.G. by the Defendant that occurred at a time different from the Indecent Exposure incident. Min. Entry, 3:11:40 P.M. (Apr. 1, 2021). The Defendant argued that although the Indictment charged two separate crimes, the Indictment was intended to prosecute Defendant for only a single incident wherein two different crimes were alleged to have been committed. *Id.* The second motion requested that the Court grant a judgment of acquittal for both charges based on lack of sufficient evidence. *Id.* at 3:28:55 P.M.

On April 2, 2021, the Court issued an oral ruling from the bench, citing to *People v. Taitano,* 2015 Guam 33, and finding that an impermissible material variance existed between the evidence proffered at trial and the allegations on which the charges were based. Min. Entry, at 1:30:04-1:40:41 P.M. (Apr. 2, 2021). The Court reasoned that based on the supporting Declaration to the Magistrate's Complaint; the People's asserted theory of the case; and discovery documents provided to the Court through the parties' exhibit binders, the Defendant was reasonably led to believe that the grand jury had *not* indicted him on two separate incidents that occurred on two different days or times. *Id.* Therefore, this Court held that the material

variance constituted unfair surprise which unconstitutionally deprived Defendant of his rights and granted the Defendant's Motion to Strike. *Id.* The Court ordered that the testimony of M.T.G. related to touching alleged to have occurred on a day different from the Indecent Exposure incident shall be stricken from the record. *Id.*

In accordance with its ruling on the Motion to Strike, the Court required both parties to submit a position statement regarding the specific portions of the record that should be stricken based on the ruling. *Id.* at 1:42:07 P.M. The parties each submitted their statements on April 2, 2021.

On April 5, 2021, in consideration of its previous Order and the parties' position statements, the Court issued the following order from the bench regarding which portions of the record shall be stricken:

1.  The record from March 31, 2021 during the People's direct examination is stricken from 11:38:44 AM - 11:39:00 AM.
2.  The record from April 1, 2021 during the People's direct examination is stricken from 2:18:16 PM - 2:25:39 PM.
3.  The record from April 1, 2021 during the Defense's cross examination is not stricken from 2:29:50 PM - 2:31:05 PM.
4.  The record from April 1, 2021 during the People's direct examination is stricken from 3:05:15 PM - 3:06:00 PM.

Min. Entry, 9:49:50-9:53:06 A.M. (Apr. 5, 2021).

After considering the evidence remaining in light of the stricken testimony, the Court denied the Defendant's motion for a judgment of acquittal on both charges finding that there was sufficient evidence for a rational trier of fact to conclude that the Defendant committed both crimes as charged. *Id.* at 9:54:59 AM.

When the jury returned for the continuation of trial, the Court gave a limiting instruction to the jury, agreed upon by the parties, regarding which testimony of M.T.G. could be considered by the jury which was also included in the written jury instructions at the close of trial. *Id.* at 10:29:30 AM.

After a six day jury trial, the following charges against the Defendant were submitted to the jury for deliberation pursuant to the Amended Indictment[1] filed on April 5, 2021: 1) Second Degree Criminal Sexual Conduct (As a First Degree Felony); and 2) Indecent Exposure (As a Third Degree Felony). The jury returned its verdicts on April 6, 2021, finding the Defendant guilty as to the charge of Second Degree Criminal Sexual Conduct (As a First Degree Felony), and not guilty as to the charge of Indecent Exposure (As a Third Degree Felony).

On April 13, 2021, the Defendant filed the present Motion to Acquit and Motion for a New Trial (hereinafter separately referred to as "Motion to Acquit" and "Motion for New Trial"). The People filed their Opposition to Defendant's Motion to Acquit and Motion for A New Trial on April 19, 2021 ("Opposition"). Defendant filed his Reply to the Opposition on April 29, 2021. On May 17, 2021, the Court heard oral arguments of the parties and subsequently took this matter under advisement.

## DISCUSSION

Defendant's Motion to Acquit and Motion for a New Trial argues that the Court must acquit the Defendant of the Second Degree Criminal Sexual Conduct charge ("CSC charge") for lack of sufficient evidence, or in the alternative, if the Motion to Acquit is not granted, the Court must grant a new trial in the interest of justice and due to prosecutorial misconduct. Motion, at 6. In response to the Motion to Acquit, the People argue that there was sufficient evidence to find the Defendant guilty of the CSC charge. Opp., at 1-5. In response to the Motion for New Trial, the People dispute that prosecutorial misconduct occurred and assert that if it did occur, any error was harmless. *Id.* at 5-8.

In his Reply, the Defendant argues that the People do not attempt to differentiate between the different legal standards for a motion to acquit and a motion for a new trial, particularly that the Court has much broader discretion when deciding a motion for a new trial. Reply, at 5. Because different legal standards apply to a motion to acquit and a motion for a new trial, this

---

[1] The original Indictment was amended to incorporate all the required elements of the second charge of Indecent Exposure (As a Third Degree Felony), as agreed upon by the parties during the jury instructions conference on April 5, 2021.

Court will address the requested relief separately.

## I. Defendant's Motion to Acquit.

### A. Hearsay and Prior Inconsistent Statements Not Objected To Are Admitted for the Truth of the Matter Asserted.

Defendant argues that the only evidence of Defendant's guilt must not be considered as substantive evidence because the testimony consisted of prior inconsistent statements which did not fit within GRE Rule 801(d)(1)(A) hearsay exception for admission of prior inconsistent statements. Motion, at 4. Specifically, the Defendant argues that certain statements allegedly made by M.T.G., which came in through the testimony of Lynna Gustav, should not be considered as substantive evidence. *Id.* This argument is without merit because the Defendant did not raise an objection on these grounds during the testimony.

As the Court noted when addressing Defendant's motion for acquittal at the close of the People's case-in-chief, Rule 103(a)(1) of the GRE states that objections must be *timely* made. Rule 103(a)(1) is interpreted to require that "when there is no objection to hearsay evidence, the jury may consider it for whatever value it may have; such evidence is to be given its natural probative effect as if it were in law admissible." *U.S. v. Foster*, 711 F.2d 871, 877 (9th Cir. 1983) (interpreting Rule 103(a)(1) of the Federal Rules of Evidence, which is substantively similar to Guam's Rule 103). Therefore, any hearsay or prior inconsistent statements that were presented during the testimony of the witnesses which were not objected to by the Defendant may be considered, both by the Court and by the jury, for the truth of the matters asserted.

### B. Whether There Is Insufficient Evidence to Warrant An Acquittal.

The Defendant also argues that the Motion to Acquit should be granted on the basis that there is insufficient evidence to find the Defendant guilty of the CSC charge. Motion, at 5-6. In response, the People argue that there is sufficient evidence because M.T.G. stated that the Defendant touched her "in [her] private," and gestured toward her lower private area. Opp., at 2. Further, the People assert that "other witnesses repeatedly indicated" that this occurred at Defendant's residence. *Id.*

Under Guam law, the Court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." 8 G.C.A. § 100.10. When faced with a motion for acquittal, the trial court's inquiry is whether, crediting all of the People's evidence and drawing every reasonable inference from it in favor of the prosecution, a rational trier of fact could find the Defendant guilty beyond a reasonable doubt. *People of Guam v. Anastacio*, 2010 Guam 18 ¶ 17.

In conducting this analysis, the trial court must afford the People "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *People of Guam v. Castro*, 2013 Guam 20 ¶ 45. The Court must not ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. *Anastacio*, 2010 Guam 18 ¶ 18. Rather, the Court's review must "give [ ] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

The elements of the CSC charge that the People must prove in this case are as follows: On or about the period between April 1, 2020 and April 30, 2020, in Guam, Defendant did intentionally engage in sexual contact with another; by causing his hand to touch the primary genital area of the alleged victim, M.T.G.; and the alleged victim M.T.G. was a minor under fourteen (14) years of age.

As to the time frame and location, when evaluating the sufficiency of the evidence for a motion to acquit, time and location are not considered essential elements of criminal sexual conduct. *People v. Taitano*, 2015 Guam 33 ¶ 15-16. Where time is not an essential element, "proof of any date before the return of the indictment and within the statute of limitations is sufficient." *Id.* at ¶ 16.

Lynna Gustav testified that on May 5, 2020, M.T.G. came to Lynna's office and described an incident that occurred a week earlier wherein the Defendant, among other acts, touched her private part. Min. Entry, at 10:47:50-11:00:00 A.M. (March 30, 2021). Further, Lynna Gustav

6

and Meriam Handy testified that M.T.G. spent the night at the Defendant's home on or about the night of April 15, 2020. Min. Entry, at 11:14:10-11:19:44 A.M. (March 30, 2021); Min. Entry, at 4:04:13-4:16:49 P.M. (March 30, 2021). Additionally, on cross examination, M.T.G. testified that she was not sure if touching occurred on a day different from the day when she alleged the Defendant dropped his towel and exposed himself to her. Min. Entry, at 2:28:13-2:33:38 PM (April 1, 2021). Based on this testimony, the Court finds that in looking at the strongest legitimate view of the evidence and all reasonable inferences that can be drawn therefrom, there evidence is sufficient for a rational trier of fact to find this allegation occurred on Guam and on a date before the return of the Indictment and before the statute of limitations has expired. *See Taitano*, 2015 Guam 33 ¶ 15-16; 8 GCA § 10.16 (sex crimes committed against minor victims may be commenced at any time).

Next, the Court finds that there is sufficient evidence that the Defendant did intentionally engage in sexual contact with another; by causing his hand to touch the primary genital area of M.T.G. Pursuant to 9 GCA § 25.10(a)(8), "sexual contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." Further, pursuant to 9 GCA § 25.10(a)(3), "intimate parts include the primary genital area, groin, inner thigh, buttock or breast of a human being."

As reasoned in *People v. Mendiola*, often child victims do not have intricate knowledge of their genitalia to sufficiently describe a sexual encounter. *People v. Mendiola*, 2014 Guam 17 ¶ 22. In many cases child victims will use general or slang terms when describing their genitalia during testimony. *Id. Mendiola* cites to examples where the victims referred to their private parts as "pookie" or "thing." *Id.* Here, the requisite "intimate part" is M.T.G.'s "primary genital area." M.T.G. referred to both her genitalia and the genitalia of the Defendant as "private." Min. Entry, at 11:36:17-11:38:57 A.M. (March 31, 2021). Additionally, while testifying, M.T.G.

motioned towards the top of her thighs. *Id.*

Further, "intent" may be proved by circumstantial evidence based on a defendant's conduct leading up to the crime. *Anastacio*, 2010 Guam 18 ¶ 33 (citing *People v. Phillips*, 116 Cal. Rptr. 3d 401, 412 (Cal. Ct. App. 2010)). M.T.G. testified that the Defendant touched her in her private area and identified the location on her body where the touching occurred, which was noted as being near the top of her thighs. Min. Entry, at 11:36:17-11:38:57 A.M. (March 31, 2021). Lynna Gustav testified that on May 5, 2020, M.T.G. came to her office and told Lynna that a week earlier, Defendant touched her and "exposed himself." Min. Entry, at 10:47:50-11:00:00 A.M. (March 30, 2021). Accordingly, in light of M.T.G.'s testimony that the Defendant touched her private while motioning to the area near the top of her thighs and the statements that M.T.G. made to Lynna Gustav, the Court finds that in viewing the evidence in the light most favorable to the People, a jury could reasonably infer based on this testimony that the Defendant did intentionally engage in sexual contact with another; by causing his hand to touch the primary genital area of M.T.G.

Regarding whether M.T.G. was a minor under the age of 14, Orlando Gustav testified that M.T.G. will turn 10 years old this coming November. Min. Entry, at 10:11:48 A.M. (March 31, 2021). Lyanna Gustav testified that on May 5, 2020, M.T.G. told her that the incident of touching happened last week, which would have been in or about April 2020, when M.T.G. would have been 8 years old. Min. Entry, at 10:47:50-11:00:00 A.M. (March 30, 2021).

When determining a motion for a judgment of acquittal, it is not the province of the court "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence, such matters are for the jury." *People v. Song*, 2012 Guam 21 ¶ 29. Further, the Court must draw every "reasonable inference" from the People's evidence in favor of the prosecution. *Anastacio*, 2010 Guam 18 ¶ 17. Based on the testimony of M.T.G. in addition to the testimony of the other witnesses, the Court finds that there is sufficient evidence to support the verdict of guilty for Second Degree Criminal Sexual

Conduct (As a First Degree Felony). Accordingly, this Court must deny the Defendant's Motion to Acquit.

## II. Defendant's Motion for New Trial.

In Defendant's Motion for New Trial, Defendant argues that various circumstances warrant a new trial "in the interests of justice." Motion, at 6. First, Defendant claims that the prosecutor committed misconduct by referring to facts not in evidence, by putting the burden on the Defendant to explain his conduct, and by mischaracterizing the Defendant's statement to the police as an admission of guilt. *Id.* Additionally, Defendant argues that a miscarriage of justice may have occurred because of confusion surrounding the contradictory testimony presented. Reply at 6.

In opposition, the People assert that they did not shift the burden to Defendant nor commit prosecutorial misconduct, and if they did, then any error was harmless. Opp., at 6-7. Further, the People argue that the jury's verdict was well-reasoned based on the testimony presented. Min. Entry, at 9:38:58-9:39:37 A.M. (May 17, 2021).

Under 8 GCA § 110.30(a), the Court, on motion of a defendant, "may grant a new trial to him if required in the interests of justice." In deciding on a motion for a new trial, the Court acts as the "thirteenth juror" to weigh the evidence and evaluate witnesses' credibility to determine if the evidence "preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *People v. Quinata*, 1999 Guam 6 ¶ 16. Therefore, "a trial court's discretion to grant a new trial is much broader than its power to grant a motion for judgment of acquittal," and the trial court "need not view the evidence in the light most favorable to the verdict." *People v. Leslie*, 2011 Guam 23 ¶ 15.

However, this Court acknowledges that motions for new trials should be granted "sparingly and with caution, doing so only in those really 'exceptional cases.'" *Id.* at ¶ 25. In *Leslie*, the Guam Supreme Court recognized a few examples wherein the trial court properly granted a new trial after weighing the evidence and finding that the government's witnesses

9

lacked credibility and the case had been marked by "uncertainties and discrepancies." *Id.* at ¶ 25-26. For instance, one case cited to in *Leslie* was *U.S. v. Simms*, wherein the federal district court in Louisiana granted a new trial because "the government's case depend[ed] upon inferences upon inferences drawn from uncorroborated testimony that . . . [was] subject to questions of credibility." *Id.* at ¶ 26 (citing *U.S. v. Simms*, 508 F. Supp. 1188 (W.D. La. 1980)).

Further, the presentation of ultimately impermissible evidence, although subsequently stricken, may be grounds warranting the granting of a new trial. The general rule is that when evidence is presented during the course of trial which the Court has ordered be withdrawn or stricken from consideration of the jury, such direction cures any error which may have been committed by its introduction. *Throckmorton v. Holt*, 180 U.S. 552, 567 (1901). However, the U.S. Supreme Court has held that notwithstanding this general rule, "there may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony, that its subsequent withdrawal will not remove the effect caused by its admission," and a new trial must be granted. *Id.*[2]

### A. Exceptional Circumstances Exist Based on the Striking of Prejudicial Testimony.

The unusual circumstances of this case are, in part, rooted in the striking of significant portions of M.T.G.'s testimony. As referenced above, at the close of the People's case-in-chief, the Defendant moved to strike all of M.T.G.'s testimony related to any incidents of alleged touching that occurred at a time different from the Indecent Exposure incident, arguing that the Indictment was intended to prosecute Defendant for only a single incident with two different charges alleged to have been committed. Min. Entry, at 3:11:40-3:19:45 P.M. (Apr. 1, 2021).

---

[2] *Compare Waldron v. Waldron*, 156 U.S. 361, 383 (1895); *Bruton v. U.S.*, 391 U.S. 123, 135-36 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."); *Holt v. U.S.*, 94 F.2d 90 (10th Cir. 1937), *with Hopt v. Utah*, 120 U.S. 430, 438 (1887); *Dolan v. U.S.*, 218 F.2d 454, 460 (8th Cir. 1955); *U.S. v. Farber*, 336 F.2d 586, 589 (6th Cir. 1964) ("But if the evidence is of such an exceptionally prejudicial character that its withdrawal from the consideration of the consideration of the jury cannot remove the harmful effect caused by its admission, a new trial will be granted.").

Ultimately, the Court agreed and granted Defendant's Motion to Strike, finding *People v. Taitano,* 2015 Guam 33, to be instructive. Min. Entry, at 1:30:04-1:40:41 P.M. (Apr. 2, 2021). In *Taitano,* the Guam Supreme Court held that although time and location are not essential elements when analyzing sufficiency of the evidence for acquittal, the evidence proffered for time and location *is* relevant to determine whether there was an impermissible material variance between the allegations charged and proof offered at the trial. *Taitano,* 2015 Guam 33 ¶¶ 18-23. The requirement that allegations and proof must correspond stems from the Fifth Amendment right of a defendant to fair notice of what he is accused of and a defendant's protection against double jeopardy. *Id.*

When the Defendant made his Motion to Strike, the Court compared the evidence proffered to the supporting Declaration to the Magistrate's Complaint, the People's asserted theory of the case, and the discovery documents provided to the Court through the parties' exhibit binders. Min. Entry, at 1:30:04-1:40:41 P.M. (Apr. 2, 2021). Based on this comparison, the Court found that the Defendant was reasonably led to conclude that the grand jury had not indicted him on two separate incidents that occurred on two different days or times. *Id.* But rather, the Indictment and charges against him referred to a single incident wherein the People alleged that two different crimes were committed. *Id.*

Accordingly, the Court held that a material variance existed between the allegations on which the charges were based and the evidence proffered at trial. *Id.* The Court found that such material variance constituted unfair surprise to the Defendant. *Id.* Further, the Court reasoned that if it allowed testimony concerning an allegation of touching that occurred on a day or time different from the alleged Indecent Exposure to be considered as evidence of the CSC charge, then if convicted of the CSC charge, it would not be clear which incident formed the basis of Defendant's conviction. *Id.* As held in *Taitano,* such uncertainty unconstitutionally exposes the Defendant to the risk of another prosecution for the same offense. *Id.* (citing *Taitano,* 2015 Guam 33 ¶ 24-26).

For this reason, this Court granted the Defendant's Motion to Strike and instructed the jury to disregard M.T.G.'s testimony referring to allegations of touching that occurred on a day or time different from the alleged Indecent Exposure, in order to cure the material variance. However, upon review, the Court finds that the delayed striking of M.T.G.'s testimony in this case presents the exceptional circumstance where the subsequent withdrawal of such testimony could not remove the effect caused by its admission. *See Throckmorton*, 180 U.S. at 567-68; *Holt*, 94 F.2d at 93-94.

There is a distinction between cases wherein the testimony stricken is perhaps only a "single point" such that the curative jury instruction is able to "clearly identify the portion to be withdrawn" and instances where the stricken testimony is more voluminous and complex.[3] The *Throckmorton* case was held to be the latter instance where the Court ordered that the jury disregard any opinion of any witnesses as to whether it was the Defendant's handwriting on a paper if that opinion was "based upon anything but the handwriting of the paper." *Throckmorton*, 180 U.S. at 566.

The *Throckmorton* Court held that due to the amount of testimony to which the jury instruction applied, "the jury could not be expected to accurately recall after a long trial lasting several weeks" which testimony could be permissibly considered based on the jury instruction. *Id.* at 567-68. The Court held that the impermissible testimony "may have made the deeper impression upon the jury, and they may have failed to realize" which particular witnesses attested to evidence which "was to be withdrawn." *Id.* at 568.

Likewise, in *Holt v. U.S.*, a witness was permitted to testify by providing a complete narrative which described his account of the conspiracy the defendant was charged with at trial. *Holt*, 94 F.2d 90, 93-94 (10th Cir. 1937). At the close of the case, the trial court ordered the statements withdrawn and instructed the jury to disregard it. *Id.* at 93. On appeal, the 10th

---

[3] *Compare Throckmorton*, 180 U.S. at 567-68, *with Hopt v. Utah*, 120 U.S. 430, 438 (1887) (where the witness-physician gave impermissible testimony opining from which direction a physical blow was delivered and the court ordered it stricken upon agreement of the parties).

Circuit recognized that "where the character of the evidence is such that it is likely to create so strong an impression on the minds of the jurors to the prejudice of the defendant, that they will be unable to cast it aside in the consideration of the case, a mistrial should be ordered." *Id.* at 94.

In *Holt*, the Court held that the curative instruction was insufficient because: 1) the impermissible testimony "was a full and complete narrative of what occurred between [the witness] and his alleged co-conspirators from the beginning[;]" 2) "[i]t was before the jury from early in the trial until the close of the evidence[;]" 3) "[i]t must have made a deep and lasting impression on the minds of the jurors[;]" 4) the testimony "squarely contradicted" the defense; and 5) and "the competent evidence on that issue was far from conclusive." *Id.* The Court concluded that it "doubt[s] whether it was possible for the jury to efface the statement from their minds and to consider the case solely on the competent evidence adduced." *Id.* The Court continued, "[i]n fact, we find it difficult to do so." *Id.* The Court held that "the instruction of the court to the jury to disregard the statement did not cure the error in its admission, and that the motion for a mistrial should have been granted." *Id.*

The Court finds that the instant case presents an example where the Court seriously doubts whether it was possible for the jury to efface, or erase, the stricken testimony from their minds based on the fact that: the testimony ordered to be stricken was voluminous and complex, it remained before the jury for several days before withdrawn, the stricken testimony was highly prejudicial as it contained serious allegations against the Defendant, and the competent evidence remaining was far from conclusive. *See Throckmorton*, 180 U.S. at 567-68; *Holt*, 94 F.2d at 93-94. The facts of this case, including how the evidence was presented to the jury in conjunction with the retroactive striking of significant portions of M.T.G.'s testimony, support a finding that this is an instance where exceptional circumstances warrant the granting of a new trial.

Like in *Throckmorton* and *Holt*, the stricken testimony was highly prejudicial. The Court struck the following testimony, holding that it impermissibly flowed from and referred to an

13

incident of touching that did not occur during the alleged indecent exposure incident:

The People asked M.T.G. "how many times" the Defendant touched her, and M.T.G. answered that once was when she was sleeping with her Aunt Lynna, but further elaboration was cut off by Defendant's objection. Min. Entry, at 11:38:57 A.M. (March 31, 2021). The next day, despite the Court's ruling sustaining Defendant's Rule 404(b) objection and ordering that the People may only introduce evidence as to *one* incident of touching, the People broadly asked "was there ever a time you were touched in that house?" to which M.T.G. responded yes. Min. Entry, at 2:18:16 P.M. (Apr. 1, 2021). The People then asked if the time she was touched was around the same time as the "towel time" referring to the alleged Indecent Exposure, to which M.T.G. responded that it was a "different time." *Id.* at 2:18:16-2:21:21 P.M. The People asked how many days away from the "towel day" did it occur, to which M.T.G. said "I don't know." *Id.* The People asked if it was "a lot of days or a few days," to which M.T.G responded "I don't know." *Id.* When asked "what happened," M.T.G. said that when the Defendant touched her, she went outside and was going to eat breakfast or dinner. *Id.* at 2:22:59-2:25:39 P.M. She said she asked to watch TV, fell asleep, and when she woke up, it was nighttime. *Id.* M.T.G. said that she felt something touch her lap. *Id.* When asked "what was touching" her lap, M.T.G. responded "Phil." *Id.* The People asked "was he using his hand," to which M.T.G. responded "yes," and when asked if she knew which hand, M.T.G. responded "no." *Id.* The People asked how that made her feel, and M.T.G. responded "sad." *Id.*

Although the Court granted the Motion to Strike on Friday, April 2, 2021, in order to rule on which specific portions would be stricken, the Court reviewed the testimony at-issue in its entirety, and gave the jury the curative instruction on Monday, April 5, 2021. As a result, the jury was able to ponder the improper testimony for nearly four days. This disjointed development of the case supports a finding that this is an exceptional case wherein a new trial is warranted in the interests of justice. *See Holt*, 94 F.2d at 93-94.

In addition to being prejudicial in nature, the stricken testimony was complex and

voluminous. *Throckmorton*, 180 U.S. at 566-68. The Court's April 5, 2021 Order pinpointed the exact minutes and seconds to be stricken in order to preserve the record for any requested playbacks from either the jury or counsel. The stricken portions amounted to a significant portion of M.T.G's entire testimony and almost all of M.T.G's testimony regarding allegations of touching. Min Entry, at 11:38:44-11:39:00 A.M. (March 31, 2021); 2:18:16-2:25:39 P.M., 3:05:15-3:06:00 P.M. (Apr. 1, 2021).

When the jury returned on April 5, 2021, the Court gave a jury instruction, agreed upon by the parties, consistent with its holding, as follows:

> Before the jury recessed last week, [M.T.G.] testified on March 31st and April 1st. The Court instructs the jury that it is striking certain testimony of [M.T.G.]. Accordingly, the jury must disregard and not consider as evidence any testimony of [M.T.G.] that refers to an alleged incident, or incidents, of touching that occurred on a day different from the alleged exposure by the Defendant of his genitals as charged in the Indictment.

Min Entry, at 10:29:30 A.M. (April 5, 2021). In addition, this was included in the Jury Instructions as "No. 31 Stricken Testimony, Disregard" which the Court read to the jury and provided in writing as part of their deliberations. However, it is worth noting that despite how much testimony this instruction was intended to strike, at no point during their deliberation did the jury request a playback of the remaining, permissible testimony.

Lastly, like in *Holt*, the remaining competent evidence supporting the CSC charge was far from conclusive. As the Court will explain in more detail below, aside from M.T.G.'s response of "yes" to the People's general question of whether the Defendant ever touched her and pointing to their area at the top of her thighs, there was very little, if any, other testimony applicable to or in support of the CSC charge.

Therefore, because of the volume, complexity, and the likelihood that the stricken testimony created so strong an impression on the minds of the jurors to the prejudice of the Defendant, it is difficult for this Court to conclude that the jury was able to accurately recall, after the passing of several days, which testimony they were allowed to consider in accordance

15

with the jury instruction. *See Throckmorton*, 180 U.S. at 567-68. The uncertainty that the jury properly convicted the Defendant based on only the permissible testimony has resulted in a lack of clarity as to which incident formed the basis of Defendant's conviction which has unconstitutionally exposed the Defendant to the risk of another prosecution for the same offense. *Taitano*, 2015 Guam 33 ¶¶ 18-23. Accordingly, this Court finds that this case is an example of the exception to the general rule that an instruction to disregard certain testimony usually cures the impermissible admission of such testimony, and that due to the exceptional circumstances of this case, the withdrawal of the testimony did not cure the effect caused by its admission, thereby warranting the granting of a new trial.

### B. Exceptional Circumstances Also Exist Because the Witnesses' Credibility and Remaining Evidence Preponderates Sufficiently Heavily Against the Verdict.

Additionally, in reviewing the remaining testimony in light of what was stricken, the Court must weigh the witnesses' credibility to determine if the evidence "preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Quinata*, 1999 Guam 6 ¶ 16. Similar to the case of *U.S. v. Simms*, the evidence in this case was marked by many "uncertainties and discrepancies." *People v. Leslie*, 2011 Guam 23 ¶¶ 25-26.

In *Simms*, the trial court concluded that the prosecution had not "convincingly established defendant's guilt" beyond a reasonable doubt because there was "no direct proof in the transcript . . . which shows that the defendant knowingly and intentionally entered into such a conspiracy," and the only evidence of the defendant's intent was based upon inferences which had equally reasonable explanations. *Simms*, 508 F. Supp. 1188, at 1204. Further, a new trial may be granted in the interests of justice where the uncertainties in the government's case relate to a central issue in dispute. *Leslie*, 2011 Guam 23 ¶ 25.

In this case, there was significant uncertainty surrounding M.T.G.'s allowed testimony regarding the touching, including that none of her *permissible* testimony specifies when the allegation of touching may have occurred or to which allegation of touching she was referring.

The permissible testimony related to the allegation of touching included the following.

The People asked M.T.G. generally "did [the Defendant] ever touch you?" Min. Entry, at 11:36:17-11:38:43 A.M (March 31, 2021). M.T.G. answered, "yes." *Id.* When asked where he touched her, M.T.G. said "in my private" and pointed to the area at the top of her thighs. *Id.* Immediately following this line of questioning, the People asked M.T.G. "how many times" the Defendant touched her. *Id.* at 11:38:44 A.M. The Defendant made a Rule 404(b) objection, which the Court sustained, holding that the People could not ask her about multiple incidents of touching. Min. Entry, at 11:26:53-11:34:43 A.M. (April 1, 2021). Based on the Court's ruling on the Motion to Strike, this testimony encompasses all of the relevant permissible testimony elicited from M.T.G. by the People that related to the allegation of touching.

Then, on cross examination, the Defendant asked M.T.G. how old she was when the Defendant touched her, to which M.T.G. stated that she forgot. Min. Entry, at 2:28:20-2:33:38 A.M. (Apr. 1, 2021). The Defendant asked if she was four (4) years old and M.T.G. responded "I think so." *Id.* The Defendant continued and asked if she knew whether the touching occurred on a day different from the towel incident, and M.T.G. stated that she forgot and that she is not sure if it happened on a different day. *Id.*

Thus, upon a review of the entirety of M.T.G's permissible testimony, M.T.G. did not specify which allegation of touching she was referring to, and in fact, her answer to Defendant's question indicates that M.T.G. may have been referring to an allegation that occurred several years prior to the incident alleged in the Indictment. Because the issue of which incident M.T.G. was referring to during her testimony was a central issue in this trial, the uncertainty surrounding this issue supports the granting of a new trial. *See Leslie*, 2011 Guam 23 ¶ 25.

Without testimony from M.T.G. indicating to which incident she may have been referring, the Court finds that the government's case depended "upon inferences upon inferences drawn from uncorroborated testimony that . . . [was] subject to questions of credibility." *See Leslie*, 2011 Guam 23 ¶ 26 (citing *U.S. v. Simms*, 508 F. Supp. 1188 (W.D. La. 1980)).

Therefore, because of the uncertainties surrounding M.T.G.'s testimony, the Court finds that the evidence in this case "preponderates sufficiently heavily against the verdict [such] that a serious miscarriage of justice may have occurred." *People v. Leslie*, 2011 Guam 23 ¶ 26 (citing *U.S. v. Simms*, 508 F. Supp. 1188 (W.D. La. 1980)). Therefore, the interests of justice require that a new trial be granted. 8 GCA § 110.30(a).

### C. Prosecutorial Misconduct.

The Defendant also argues that a new trial should be granted based on improper remarks made by the People which amounted to prosecutorial misconduct. Motion, at 6-9. The Defendant alleges that the improper remarks include: 1) mischaracterizing the Defendant's written statement to the police as an admission of guilt; 2) misstating testimony; 3) making personal attacks on defense counsel by calling defense counsel's argument "inappropriate." *Id.*

In response, the People assert that because the Defendant waived his right to remain silent when he chose to make a written statement to police, the People were free to comment on the parts of the allegations that the Defendant was avoiding in the written statement. Opp., at 5. Alternatively, if the People did make improper statements, the People argue such statements were harmless. Opp., at 5.

In *People v. Reyes*, the Guam Supreme Court held that "prosecutorial misconduct occurs when a 'prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Reyes*, 2020 Guam 33 ¶ 23. If it is determined that the prosecutor's statements were improper, then the Court must determine whether that error affected the substantial rights of the defendant which can be found when the defendant establishes a "reasonable probability that but for the claimed error the result of the proceeding would have been different." *Id.* at ¶ 25. Stated differently, a defendant must establish that "upon a review of the entire record, 'the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *Id.*

When addressing whether the prosecutor's statements were improper in *Reyes*, the Court

separated the statements into four categories: 1) statements alleged to constitute improper vouching; 2) statements alleged as improper statements of the law; 3) statements alleged as improper inferences from the evidence; and 4) statements alleged as generally inflammatory. *Reyes*, 2020 Guam 33 ¶ 21. Here, the Court will organize the first two claims of improper statements asserted by the Defendant within the third category, and the third claim of improper statements within the fourth category.

### 1. Alleged Mischaracterization of Defendant's Statement and Alleged Misstatement of the Testimony.

Defendant claims the People mischaracterized Defendant's written statement and misstated the testimony. In *Reyes*, the Court recognized that "a prosecutor must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence [presented]." *Reyes*, 2020 Guam 33 ¶ 44. The Court conducted a factual analysis of the alleged improper statements compared to the cumulative evidence to determine whether the statements were reasonable inferences. *Id.* at ¶¶ 46-53.

First, Defendant claims that the People's closing argument improperly characterized the Defendant's written statement as an admission of guilt. Motion, at 6-7. In *Reyes*, the Court held that the People may use the evidence presented to make a reasonable inference that supports the prosecution's theory of the case. *See Reyes*, 2020 Guam 46 ¶ 46. Further, a statement is not improper simply because the Defendant does not agree with the People's reasonable interpretation of the evidence, which the jury is free to accept or reject. *Id.* at ¶¶ 43-53.

The Defendant's written statement was admitted into evidence, without objection, as Exhibit 8 during the People's direct examination of Officer Pewtress. Min. Entry, at 2:28:27 P.M. (March 30, 2021). The statement from Defendant describes an incident where the Defendant says he had finished showering, walked out of the bathroom, and M.T.G. walked in and saw him in his underwear. Exhibit 8. The Defendant wrote that M.T.G. said "gotcha," and he tried to cover himself. *Id.*

When discussing Defendant's written statement during closing argument, the People said

"what is important is what is not there." Min. Entry, at 10:18:24-10:24:49 A.M. (Apr. 6, 2021). The People noted that the Defendant did not mention the touching incident and did not mention Lynna's presence in the room. *Id.* The People said that the point of the written statement "is not what is or is not in there," the point is that it "corroborates [M.T.G.]," that the two of them "were in a room alone in 2020." *Id.*

In opposition to the People's theory—that the statement corroborates that the two of them were in a room alone together—the Defendant argues that the statement was clearly referring to an entirely different incident than the incident alleged in the Indictment. Motion, at 6. However, although the Defendant's statement did not refer to touching or indecent exposure, it is not unreasonable to characterize the statement as corroboration of the fact that M.T.G. and Defendant were in a room alone together.

On cross-examination, Defendant attempted to have Officer Pewtress clarify that the Defendant's description of what occurred was not a crime and that the statement was referring to an entirely different incident than what was alleged in the Indictment. Min. Entry, at 2:48:02-2:2:57:31 P.M. (March 30, 2021). Officer Pewtress noted that Defendant's description of what occurred did not constitute a crime. *Id.* However, he said that while the Defendant *could* have been referring to a different incident, he is not sure because sometimes people have a hard time remembering dates of when things occurred. *Id.*

Based on a review of the evidence and testimony, this Court finds that similar to *Reyes*, the Defendant simply disagrees with the People's purported theory arising out of the statement. Therefore, the People's characterization of Defendant's statement as corroboration that M.T.G. and him were in the same room alone at some point in 2020 is not improperly characterizing the Defendant's statement as an admission of guilt.

Second, Defendant argues that Lynna Gustav and Penina Gustav testified that M.T.G. recanted the allegations to them, but the People misstated the testimony by claiming M.T.G. only said that she told her mom, Meriam Handy, before she told her Aunt Lynna, which was a change

20

from earlier information which indicated that M.T.G. told her Aunt Lynna first. Motion, at 7. A review of the testimony reveals that M.T.G. did clarify that she told her mom first, and not Lynna. The Defendant asked M.T.G. if she ever told Lynna Gustav that "this didn't happen" and M.T.G. responded, "No, what I meant was like what I told my mom, I told her that I told Lynna that this happened, when I meant that I never told her this yet." Min. Entry, at 2:31:00-2:33:38 P.M. (Apr. 1, 2021). Based on what M.T.G. stated, the People's description that M.T.G said, "I did tell my mom about the touching before I told Auntie Lynna" is not an improper misstatement of the testimony.

During the People's closing argument, the People noted the recantations, asking "where are they?" and said that "it comes down to whether you believe Lynna." Min. Entry, at 11:39:55-11:45:30 A.M. (Apr. 6, 2021). In looking at the context of the People's closing argument, the People did not misstate M.T.G.'s testimony, but rather left it for the jury to make their own inferences from M.T.G.'s statements on this issue. *See Reyes*, 2020 Guam 33 ¶ 53 (prosecutor's statements were not improper where "each statement reasonably interpreted the evidence that the jury could accept or reject.").

### 2.    Alleged Personal Attack On Defense Counsel.

Lastly, Defendant argues that the People made unwarranted personal attacks on defense counsel by calling his argument "inappropriate." Motion, at 7. In response, the People argue that this comment was in response to the defense counsel asking the jury to put themselves in the Defendant's shoes. Opp., at 7.

However, it is worth noting that neither the People nor the Defendant objected when either of these comments were made. Min. Entry, at 10:50:01-11:05:30 A.M.; 11:25:55-11:26:55 A.M. (April 6, 2021). Further, while a personal attack on defense counsel's integrity may constitute misconduct, "criticism of defense theories and tactics is a proper subject of closing argument." *People v. Cruz*, 1997 WL 774824, at *7 (9th Cir. 1997) (where the prosecutor repeatedly told the jury that defense counsel was deliberately trying to confuse them); *U.S. v.*

21

*Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997) (where the prosecution called defense counsel's argument "untrue" and the Court held that this was an "invited reply" to defense counsel's closing argument).

Although it may be true that the People should have objected if they believed defense counsel's statement to be legally inappropriate, defense counsel also failed to object to the People's characterization of defense counsel's argument as "inappropriate." Furthermore, suggesting that the jurors place themselves in the position of a party is impermissible, thus the People's comment that defense counsel's argument was "inappropriate" was an "invited reply" on this tactic employed by defense counsel. *See Sayetsitty*, 107 F.3d at 1409.

Accordingly, this Court finds that the People did not mischaracterize the Defendant's statement, misstate the testimony, nor make an unwarranted personal attack on defense counsel. Therefore, the Court's granting of a new trial is not based on these grounds.

## CONCLUSION

For the foregoing reasons, this Court hereby **DENIES** Defendant's Motion to Acquit and **GRANTS** the Defendant's Motion for a New Trial as to the First Charge of Second Degree Criminal Sexual Conduct (As a First Degree Felony).

**SO ORDERED:** ___AUG 1 6 2021___

HONORABLE DANA A. GUTIERREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
___AG , POSC___

Date: 8/16/21 Time: 5:45

*Edna M. Nego*
Deputy Clerk, Superior Court of Guam

22